**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Renee Lee Miller,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of the Social Security Administration,<br><br>    Defendant. | No. CV-17-02705-PHX-GMS<br><br>**ORDER** |

Pending before the Court is claimant Renee Lee Miller's appeal of the Social Security Administration's (SSA) decision to deny disability insurance benefits and supplemental security income. (Doc. 16). For the following reasons, the Court upholds the ALJ's decision.

**BACKGROUND**

On November 25, 2013, Ms. Miller filed a claim for disability insurance benefits. She subsequently filed a claim for supplemental security income on April 9, 2014. She alleged that she suffers from various mental impairments, including epilepsy, as a result of a successfully removed brain tumor. (Tr. 34). Ms. Miller alleges a disability onset date of January 1, 2007. The claim was denied on initial review and reconsideration. (Tr. 73–74; 111–12). Ms. Miller appeared before Administrative Law Judge (ALJ) Myriam C. Fernandez Rice on January 7, 2015. (Tr. 31). In evaluating whether Ms. Miller was disabled, the ALJ undertook the five-step sequential evaluation for determining

disability.[1] (Tr. 32–33).

At step one, the ALJ found that Ms. Miller had not engaged in substantial gainful activity since the alleged onset date of January 1, 2007. (Tr. 34). At step two, the ALJ determined that Ms. Miller suffers from post-surgical removal of a brain tumor and associated continued seizure disorder; as well as depression, anxiety, and neurocognitive disorder. (Tr. 34). At step three, the ALJ concluded that Ms. Miller's impairments did not meet or equal the criteria of a listed impairment in the regulations. (Tr. 34–36). At step four, the ALJ determined Ms. Miller's residual functional capacity and found that she could perform work at all exertional levels, but with various non-exertional exceptions, such as never climbing ladders, no exposure to unprotected heights or moving machinery, and no driving. (Tr. 37). Other non-exertional limitations include performing only simple, routine, repetitive tasks and limited interaction with the public. (Tr. 37). As part of this analysis, the ALJ considered the opinion testimony of treating physicians at Banner Desert Medical Center and various consultative examining physicians and reviewing physicians. (Tr. 40–41). The ALJ then determined that Ms. Miller is not capable of performing her past relevant work as a receptionist, telemarketer, or stock

---

[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal quotation marks and citations omitted).

clerk, but she could perform work that is available in the national economy, such as kitchen helper, industrial cleaner, and automobile detailer. (Tr. 42). Accordingly, the ALJ determined that Ms. Miller does not qualify for disability benefits. (Tr. 44).

The Social Security Administration Appeals Council denied Ms. Miller's request for review. (Tr. 1). She filed this complaint on August 10, 2017 to seek judicial review pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Legal Standard

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted). A reviewing court may draw specific and legitimate inferences from an ALJ's decision, but it cannot speculate on the ALJ's reasoning or make "post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1225 (9th Cir. 2009).

### II. Analysis

Claimant presents two arguments: (1) the ALJ improperly discounted her allegations, and (2) the ALJ failed to consider the entire record in formulating her residual functional capacity.

### A. Claimant's Credibility Concerning Subjective Symptoms

When a claimant alleges subjective symptoms, the ALJ must follow a two-step analysis to decide whether to credit the claimant's testimony. First, the claimant "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)) (quotation marks omitted). The claimant does not need to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282. Second, if the claimant can make the showing required in the first step and the ALJ does not find any evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1281.

The ALJ found that Claimant's medically determinable impairments could reasonably cause the alleged symptoms, but that the record did not support Claimant's allegations concerning the intensity and limiting effects of her condition. (Tr. 38). The ALJ generally discredited Claimant because she successfully managed seizures by taking Keppra and Lamictal, and she managed anxiety with Xanax; the objective medical evidence and medical record indicate that Claimant went through months at a time without suffering a seizure; Claimant's daily activities, such as driving, caring for her children, working for her sister-in-law's business, and attending family functions, are inconsistent with the alleged limitations; and otherwise minimal evidence to support her claims of depression and anxiety. (Tr. 38–40). Claimant objects to the ALJ's analysis of her activities of daily living, her part-time work for her sister-in-law, and the objective medical evidence.

### 1. Activities of Daily Living

Claimant argues that the ALJ improperly considered her activities of daily living and that they do not establish that Claimant can work full-time. But the ALJ did not find

- 4 -

that the Claimant's activities of daily living were dispositive of the claim. Rather, the ALJ found that they demonstrated the Claimant is "not limited to the extent one would expect given the complaints of disabling symptoms and limitations." (Tr. 39). Instead, the "physical and mental capabilities requisite to performing many of the [activities of daily living] as well as the social interactions replicate those necessary for obtaining and maintaining employment." (Tr. 39–40). ALJs may consider claimants' activities of daily living. *See Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the ALJ was permitted to consider the claimant's daily living activities of cooking, cleaning, shopping, interacting with family, and managing finances); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th 1999) ("If a clamant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting [here, fixing meals, doing laundry and yard work, and caring for a friend's child], a specific finding as to this fact may be sufficient to discredit a claimant's allegations."). The ALJ properly weighed Claimant's activities of daily living. These considerations were not dispositive, but were a piece of evidence tending to show that the Claimant was not as disabled as alleged.

### 2. Part-Time Work

Claimant also objects to the ALJ's consideration of her part-time work for her sister-in-law. Claimant asserts that the ALJ erred by failing to consider that she had been forced to reduce her hours, quit the job, and take frequent breaks while at work. Claimant's earnings record demonstrated that she worked from 2008–2015 in a part-time capacity. (Tr. 34). Claimant testified at the hearing that she last worked in April 2016. (Tr. 56). The ALJ noted that "[a]lthough that work activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported." (Tr. 40). Where "a claimant tried to work for a short period of time and, because of his impairments, *failed*, . . . actually *supported* his allegations of disabling pain." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038–40 (9th Cir. 2007) (finding that the

claimant's attempt to work for nine weeks was not a clear and convincing reason to find the alleged symptoms not credible). Claimant's situation is difficult, however. Claimant worked for almost eight years past her disability onset date. As the ALJ noted, this work did not constitute substantial gainful activity. But, the ALJ did not err in considering Claimant's lengthy post-disability onset work history in determining that Claimant's abilities are somewhat greater than she has reported.

### 3. Objective Medical Evidence

Finally, Claimant argues that the ALJ erred in finding that the medical evidence does not support Claimant's allegations of the frequency of her seizures. The ALJ found that Claimant suffered only a handful of seizures over the last eight years: a seizure in February 2011, preceded by a reduction in her medication; a seizure in July 2011, preceded by drinking eight beers the night before; and, a report in September 2014 that she was suffering 1–2 seizures a week after a lapse in care. (Tr. 38). Claimant generally argues that the ALJ failed to differentiate between "seizures" and "pseudoseizures." (Doc. 16, pp. 13–14). At steps one through four of the sequential evaluation, the claimant maintains the burden of proof to prove disability. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). Moreover, Claimant did not refer to "pseudoseizures" during the hearing in front of the ALJ. Claimant and her representative referred to them as "partial seizures" and described them as lasting 30 seconds to a minute and a half, in which Claimant is aware of what is going on but can't talk and stutters. (Tr. 58). Claimant's brief identifies only minimal evidence of pseudoseizures. Claimant identifies a note from Dr. David C. Izenberg stating: "Please excuse Renee Miller from jury duty as she suffers from panic disorder and anxiety. She also suffers from pseudoseizures and is unable to serve as a juror." (Doc. 434). A consultative examiner, Dr. Gary M. Reyes, wrote a report noting that Claimant "stated that she has been experiencing 'pseudo-seizures'/panic attacks since 2012 averaging once a week" and that Claimant "described her symptoms as 'can't speak, loose motor control, can't move arms, body jerks to one side." (Tr. 512–13). Claimant bears the burden of establishing her severe impairments

and their impact on her residual functional capacity, and Claimant's scant evidence of pseudoseizures does not meet that burden. The ALJ did not err in finding that the objective medical evidence conflicts with Claimant's testimony.

As for Claimant's regular seizures, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). And, an ALJ may discredit claimant's testimony with evidence of conservative treatment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."). As referenced by the ALJ, Ms. Miller told her physician in 2011 that "she did not have seizure after taking Keppra" and she had been seizure free since maintaining her dosage. (Tr. 787). In 2014, although she reported additional seizures, that had been preceded by a lapse in care. The ALJ did not err in determining that Claimant's allegations of the frequency of her seizures are not supported by the medical record.

### B. Residual Functional Capacity

The ALJ determined that Claimant had severe impairments, but that they did not meet or medically equal a listed impairment. (Tr. 34). When an impairment does not meet or equal a listed impairment, the ALJ must make a finding about the claimant's residual functional capacity. The RFC is then used at steps four and five of the sequential process to determine whether the claimant can return to past relevant work or adjust to other work in the national economy. 20 C.F.R. § 404.1520(e). A claimant's RFC "is the most [the claimant] can still do despite [the claimant's] limitations." *Id*. at § 404.1545(a)(1). In assessing an RFC, ALJs must consider "all of [the claimant's] medically determinable impairments." *Id*. at § 404.1545(a)(2). Here, the ALJ determined that Claimant could perform work at all exertional levels, but should never climb ladders, should avoid even occasional exposure to unprotected heights and moving machinery, and should not drive. (Tr. 37). The ALJ also found that Claimant can perform simple routine repetitive tasks,

with only occasional changes in work setting and limited interaction with the public. *Id*. Claimant argues that the ALJ failed to account for limitations caused by her deficiencies in maintaining concentration, persistence, and pace, social limitations, and fatigue and headaches.

### 1. Concentration, Persistence, and Pace

In evaluating whether Claimant's impairments qualified as a listing impairment, the ALJ evaluated Claimant's mental impairments. To meet the "paragraph B" criteria, a claimant must show that their mental impairment or impairments result in two of the following: "marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation." (Tr. 35). The ALJ found that Claimant had moderate restrictions with regard to concentration, persistence, and pace. (Tr. 36). The ALJ noted that state agency consultants believed Claimant to have moderate restrictions, but that Claimant testified to her ability to pay bills, use a checkbook, drive, and use a computer. *Id*. This analysis is not an RFC determination. The ALJ accounted for Claimant's limitations by limiting Claimant to a job that requires only the performance of simple, routine, and repetitive tasks. (Tr. 37). Although limiting a claimant to unskilled work does not necessarily account for a claimant's impairments in concentration, persistence, and pace, here, the ALJ based this determination on Claimant's testimony about her daily activities and work history. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) ("[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony."). Similarly, the state agency examiners relied on by the ALJ assess that Claimant was not significantly limited in the ability to carry out short and simple instructions and that she was capable of competitive, remunerative unskilled work. (Tr. 106–08; 143–45).

Claimant argues that the fact that the ALJ asked the Vocational Expert ("VE") a hypothetical involving off-task time evidences that the ALJ did not equate simple,

repetitive work with concentration, persistence, and pace accommodations. ALJs must ask VEs hypothetical questions that "set out all of the claimant's impairment's" and are based on "evidence appearing in the record, whether it is disputed or not." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (internal quotations omitted). The Claimant's testimony alleged that she often needed to take breaks. Although the ALJ ultimately discredited Claimant's testimony, the fact that the ALJ asked questions of the VE related to Claimant's possible impairments does not establish that the ALJ improperly formulated the RFC. Claimant also asserts that other physicians' opinions support a contrary finding with regards to Claimant's ability to work in spite of her impairments of concentration, persistence, and pace. Claimant notes that Dr. Reyes's consultative report supports a finding that she has limitations in her ability to maintain attention and concentration. Dr. Reyes's report does note that her testing "would appear to suggest some limitations in her ability to maintain attention and concentration." (Tr. 522). But this is not inconsistent with the ALJ's findings. Claimant also states that a different consultative examiner, Dr. James E. Huddleston, found that Claimant is moderately impaired in her concentration and persistence but "can likely carry out noncomplex instructions and sustain a routine without special supervision." (Tr. 335). Claimant argues that during her examination with Dr. Huddleston, she had to restart some tests due to anxiety. Claimant appears to suggest that the ALJ and the Court should use this fact to override Dr. Huddleston's conclusion that Claimant can carry out routine tasks. This is not the Court's role. Finally, Claimant argues that the state agency examiners opinions should be given little weight due to their reliance on flawed understandings of Claimant's daily activities and work history. For the reasons stated above in the Court's examination of Claimant's credibility, the state agency examiners could reasonably rely on Claimant's daily activities and work history.

### 2. Social Functioning

Claimant asserts that the RFC fails to account for her restrictions in social functioning. The ALJ fashioned an RFC that restricted Claimant to limited interactions

with the public. Claimant argues, however, that her social limitations apply to all types of people and that she would also have difficulty interacting with coworkers and supervisors. In evaluating the Claimant's social functioning, the ALJ found that Claimant had only mild difficulties. (Tr. 35). The ALJ noted that Claimant goes to family functions, leaves her home daily, goes shopping, and maintains a relationship with her boyfriend. *Id*. The ALJ also cited the state agency examiners' evaluations that Claimant had mild restrictions in social functioning. Claimant points to Dr. Reyes's opinion that Claimant's impairments "would appear to suggest some limitations in her ability to get along with coworkers, respond appropriately [to] supervision or maintain socially appropriate behavior." (Tr. 522). Claimant also notes that the state agency examiners' said she could "[r]espond appropriately to supervisors, co-workers, and social intercourse in the workplace, when interactions are limited in frequency, duration, and scope." (Tr. 108). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at 679.

### 3. Headaches and Fatigue

Claimant argues that the ALJ erred by failing to consider her complaints of fatigue and intermittent headaches. Claimant has not cited any medical providers' opinions that the fatigue or headaches would impact Claimant's ability to work. Claimant also does not cite to any of her testimony before the ALJ that identified headaches or fatigue as a serious symptom affecting her ability to function and work. Moreover some of the medical records cited by Claimant do not support the conclusion that the headaches and fatigue are debilitating. Doctors' records note: "[m]ild headaches intermittently" and "some mild fatigue." (Tr. 362, 367, 374, 376, 377, 470, 618). Another provider reports that Claimant reported no headaches and no fatigue, but assessed the presence of fatigue. (Tr. 573, 578). Claimant was instructed to lie in a dark room and place a cool compress on her head to treat headaches. (Tr. 583). Reports of intermittent mild headaches and mild fatigue are insufficient to meet Claimant's burden of establishing that these are impairments that affect her ability to function. Further, Claimant appears to have only

- 10 -

been told to lie down and has not been prescribed medication or undergone subsequent testing relation to her headaches. Evidence of "conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra*, 481 F.3d at 751.

## CONCLUSION

The ALJ properly weighed Claimant's credibility, considering her activities of daily living, work history, and the objective medical evidence, in conjunction with other considerations. Claimant's citations to evidence of pseudoseizures is minimal and the ALJ did not err in determining that there was not medical evidence to support her claims. The ALJ also properly fashioned the RFC. The ALJ took into account Claimant's moderate limitations in concentration, persistence, and pace. The ALJ's determination that Claimant only had mild limitations in social functioning was reasonable. Claimant did not meet her burden of proof to establish that headaches and fatigue were significantly prevalent impairments that needed to be accounted for in the RFC.

**IT IS THEREFORE ORDERED** that the ALJ's decision to deny disability benefits and supplemental security income is affirmed. The Clerk of Court is directed to enter judgment accordingly.

Dated this 6th day of September, 2018.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge